Case number 12-4428, United States of America v. Daquann Hackett. Arguments not to exceed 15 minutes per side. Mr. Doughton, for the appellant, you may proceed. Good morning, your honors. I am David Doughton, counsel for Daquann Hackett. I'd like to reserve three minutes for rebuttal. Sure. This morning, I would like to address count four in a couple of aspects. That's the count of the use of a firearm in the commission of a violent offense, including the indictment issue, which was a supplemental issue here. The problem with this case, to start with the indictment, is the grand jury indicted him for a five-year mandatory minimum. It's unquestioned that that's an element underlain. The problem is, as the judge heard the testimony, it becomes clear that the judge is, well, you know, the conduct of Mr. Hackett as such, it's really more. It looks like he's brandishing, there was a shooting of Mr. Perkins back and forth. So in the jury instructions, the judge instructed kind of a conglomeration of things. He didn't, the jury wasn't given specific findings, if you will. Do you find this is a possession? Do you find this is a brandishing? Or do you find if this is an actual shooting? The judge essentially gave all of those elements into one. The verdict form itself just says finding guilty of 924A and doesn't delineate which section, 5, 7, or 10 that it is. So we have a situation where there's a variance from what the grand jury found. For whatever reason, the grand jury's findings were limited to the five-year mandatory minimum. Defense counsel, and the reason I came in supplemental, is defense counsel did not object to the instruction. You know, clearly what should have been requested as judge, I object to anything more than the five-year mandatory minimum. That's what the grand jury found out. The objection came at sentencing. When the pre-sentence report came back with the 10-year mandatory minimum, at that point, defense counsel objected and said, Judge, the indictment only says the five-year. The government argues, well, this is really harmless error because in this situation, there's no question there was a shooting. Both Mr. Perkins and Hackett ended up going to the hospital for wounds. But the question here, and the reason it was raised as kind of an apprendi, is I think that the apprendi makes clear that if there's an element, it has to be indicted. This is a grand jury situation. It has to be indicted. I mean, it's a different offense, I guess, right? It is a different offense. C, whatever, small three. It's akin to a situation, let's say that Mr. Hackett was charged with the possession of drugs. During the trial, it came out, he's moving these drugs. He's distributing these drugs. It's clear it was part of discovery. Everybody knew it's no surprise. And the judge then instructs on distribution. No, not on distribution. The judge then instructs that you can find him guilty if he possessed or distributed. Yes. Right. Not an instruction on distribution. No, what I'm saying is it's a completely different offense with, frankly, higher penalties, such as this case. But there are two problems here. Yes. One is that it's a completely different offense. And two is, if I understand correctly, even that offense was not properly instructed. That's right. Because then you have a unanimity issue in that because there was no finding, no unanimous finding by the jury as to a 5 or a 7 or a 10, kind of a Chad versus Arizona situation in which you could have had some jurors believed, for whatever reason, that, you know, look, there's only enough here for a 5-year element, and others think there's a 10-year element. But the way the instruction was where they combined them, all 12 agreed there was some 924 violation. So I think you have multiple problems because of the improper indictment. The second aspect of this case is, and this is difficult in gang cases, clearly Mr. Hackett was a member of this conspiracy. Clearly Mr. Hackett was guilty. We're not arguing that. The issue is, as a gang member, it almost creates a presumption of guilt as to any offense that gang member does. And I think that it's required that the evidence establish that whatever additional offense happened was in furtherance of the conspiracy. An example I'd like to give is if Mr. Hackett walked into a subway and was hungry and walked out and didn't pay for it, is that in furtherance of the gang? Well, obviously no. This situation, of course, is closer than that, but we have a situation where what he was angry about was that he was accused of this shooting two weeks before. And the woman that he believed who had been spreading that he was part of, somebody had shot at her, he stopped to confront her. I think it's important he did not have a gun at that time. And they got into this argument, and he's saying, I didn't do this, I didn't do this. But she knew that he did. At some point, somebody went and got a man who came down with a gun to chase him away. It was at that point that Mr. Hackett stopped a friend, maybe even a gang member, although it didn't really establish that, tried to get a gun. What's interesting about it is the person in the car didn't want to give him the gun. So clearly whoever was in the car did not want to be part of this. And the point is, he's acting on his own. At some point he wrestled the gun away. They had a shootout. They didn't ask for self-defense, but clearly that was the implication. And then after this happened, they were both injured. If it's a retaliatory situation, it didn't come out that way, because the evidence says that Mr. Hackett tried to go make amends, if you will, after this all happened with Debbie Newland, the person, the victim's family in this case. So it seemed clear that this was an action of Mr. Hackett on his own because he believed he had been falsely accused of this two-week shooting. The government's position, if I understand it, was, look, they like to do acts of intimidation, because if they do acts of intimidation, that kind of furthers their purpose, almost like a mafia-type situation, like, don't screw with us. And so clearly this act would further the reputation of LSP, so therefore it comes within. I don't think that's sufficient in this case, particularly in this case when there is evidence to the contrary that this was, I didn't do this, not that, don't mess with me, I did it. I didn't do this. How dare you falsely accuse this. He came by without a weapon on that day. He only went to get the weapon after he had a gun stuck into his chest by Sherman Perkins. Whatever crime happened at that point was not in furtherance of the conspiracy. Let me make a couple points back to you on this. I mean, first, a legal point. As I understand this Vicar Statute, it's not that his action had to be furthering the conspiracy. It could be merely that he was maintaining or increasing his position in the enterprise. That's correct. And he's the leader. Arguably. Yes, I understand. Arguably. I don't mean to. I understand. But it seems that he had a significant role in this. And I understand how you could argue to a jury this is self-defense. And I think, you know, I mean, this is not a slam-dunk case necessarily. But why isn't it true that a jury, I mean, couldn't a jury conclude that this guy gets challenged on his own turf by Perkins who runs out with a pistol? Right. And, you know, he's got a couple choices. He could withdraw or he can try to stand up to him. Right. But if he withdraws with the code of conduct that these guys seem to have, and there was a fair amount of testimony to that effect, you know, that might diminish his standing that, you know, he didn't take care of his business, which was the term they used in yesterday's case. But, you know, that's sort of, I mean, there was an analog here. You can't just get pushed around on our turf. And so he stands up to him and goes to the lengths of trying to get a gun from some guy driving by just because he's got to maintain his position in the game. Couldn't a jury find that? Could they? They did find that. But here's the problem. Here's the problem. This is where it's almost this presumption. It's almost a sandstorm, this presumption. And the problem is it's a good theory as to motive as to why he did that. But in this case, to be sufficient, there should be something. He said, I couldn't let that guy, I would look bad. That, you know, don't you mess with any of the gang members during the shooting. I'll teach you to mess with an LSP member. That, you know, that if you get in our way, we will. There was nothing said like this. Every piece of evidence was that it was a personal thing. No one, including the woman came back, you know, the victim, Newland, or the bystanders, or even Mr. Perkins, said that he made any intimation that, you know, look, do you know who I am? I'd even said that. Do you know who I am? Do you know what my status is around here? Then you have that leap from probably, maybe, it's reasonable that this was the reason to beyond reasonable doubt. At this point in time, it's a valid theory for the government to argue that this is his actions, but they didn't prove it. They didn't prove it. A mere act, because it's arguable if you went into the subway and you took the store and you didn't pay for it. The reason is, almost like the mafia, you know, you don't make me pay for food because of who I am. But the mere act of doing without some sort of corroboration, if that was his motive, it's hypothetical. It's not beyond a reasonable doubt, and that's the position here. For that reason, Your Honor, we would ask that count four, well, be stricken pursuant to the latter argument, or at least it be reduced to a five-year mandatory minimum on the indictment issue. Thank you very much. Very well. Thank you, Mr. Dodd. On the Perkins shooting, the government didn't have to show that Hackett said, I'm shooting you because I'm an LSP and I'm, you know, defending my turf or my reputation or anything else. And it's, you know, the evidence is viewed in the light most favorable to us. It's not, you know, it's viewing the evidence in the light most favorable to the government. And Hackett, the Hackett-Perkins shooting doesn't happen except for the drive-by shooting of Newell's house, which happened two weeks earlier. It's all related to that, and that was LSP. It's clearly LSP. They have an ongoing feud with Newell's son, Shareek Jackson, and Newell, you know, accused Hackett of being there. And there's some testimony that Hackett was the driver of the car in the first shooting. Two people testified that Hackett said that he did drive the car, but he didn't shoot anybody. But it's still what matters is whether that's, you know, LSP-related. And viewing the evidence in the light most favorable to the government, that is LSP. Well, related, I'm not sure. I mean, that's kind of a vague term. Well, related to the conspiracy, I guess. Well, let's put it in terms of, you know, I guess the statute here, maintaining or increasing his position. How does a jury find beyond a reasonable doubt that he wasn't just trying to defend himself when this guy sort of, I think unexpectedly, runs out with a pistol? Well, because the whole incident was all about an LSP feud. Right, but he went there unarmed, right? Apparently, because he had to get a gun from someone else. Right, so he went there unarmed. There was no indication that he was initiating an altercation or anything like that. And then somebody else injected the firearm. I'm not saying he was defending himself, but in what way does that show that he's trying to maintain or promote his position in the gang? The whole fight between the Newell-Jackson family and LSP is really about maintaining a position in the gang. At least that's our position. The whole feud, you know, it's a feud. Newell's son wouldn't join LSP, and then they decided they were going to do all these things. And this was an outgrowth of that. And that's why they could find that this was part of the conspiracy. So just about anything you do as a gang member? No, not necessarily. I mean, Mr. Doughton made the comparison to going to Subway and not pay for potato chips or food. Without something else to show, here you have the prior history between these people. And she's, you know, Newell, in Hackett's defense here, Newell's kind of started this whole thing. Deborah Newell started this incident. Hackett's driving by, she kind of calls him over and accuses him of being involved in this. He arguably, if you listen to some of the testimony, he admits he drove the car two weeks before, but he didn't shoot anybody, and then it escalated. But it was all related to this LSP feud. Stealing, you know, food from a convenience store isn't necessarily related to LSP. I know, but how does... Is that all that's required, that it's somehow related to the gang? Or is there a requirement that you do some act with the purpose of somehow promoting your position or maintaining it? Well, this was that. I mean, the feud which caused the first drive-by shooting, this was just a continuation of that. It was in furtherance of the enterprise, of the gang enterprise. This was just a...and it continued even after this, too. After Perkins and Hackett shot each other, it continued more. There were two or three more incidents. So this was an ongoing... What about Camp 4? Camp 4, okay. That's a pretty interesting issue, really. Hackett was charged with just use or carry, small i. The jury was instructed really use or carry, small i. The district court talked about when they were defining active employment, they talked about that use could also include firing the weapon, but that was in the definition of active employment. And then the judge, really not until sentencing. And Mr. Doughton talked about how maybe there should have been an objection to the jury instructions. I don't think the jury instructions in and of themselves were wrong, which is why there was no objection. The problem came at sentencing, because that's the first time that... Well, do you agree that it should be knocked down to five years? No, because of MAC, because of the MAC case. We honestly, when we first started to look at this issue in our office, we were considering just conceding this case. And then we found MAC, and we saw that MAC was a very similar situation. The jury wasn't instructed on brandishing, and the court just on its own did brandishing. But MAC never disputed brandishing. As the predicate here, you're saying the judge on his own initiative in sentencing says, whoa, whoa, whoa, this guy actually discharged. Right. And the judge said, so he's subject to a mandatory minimum? He didn't say that. He just sentenced him to the 10-year mandatory minimum. He didn't make any specific findings that he was giving him the mandatory minimum on that case. Yeah. He just sentenced him to the 120 hours. How do you do that when he wasn't even charged with that? Well, that's the problem. And he even put that, the judge even put that, he cited 3I in his journal entry. Right. Yeah. That's kind of... And that is, right. So we know what he was doing, but... How does MAC help you? Because on MAC, since MAC never, MAC only disputed the fact whether he was the perpetrator. He never disputed the fact that the firearm was brandished. Who was he charged with? MAC was charged with... User carry. User carry. And then he brandishes. And then he brandished, and the judge goes up, and then the judge goes brandishing and then sentences him. And I was on that panel, right? That was Judge Trant who wrote that? Yes. And she said that, well, I mean, the only way he could find he was using it was by brandishing it, because that's how he used it in this case. Right. But this case seems different because there, well, I mean, in this case, in order to say that, I mean, your argument is it's harmless because had the jury been instructed about discharge, then obviously they would have found that. Right. Because it wasn't even disputed that he discharged the weapon. Right. But, I mean, isn't the counter to that? Well, if they were instructed about discharge, that would be a constructive amendment to the indictment, which would be per se reversible. And so we can't find harmlessness on that ground. I mean, we didn't have that problem in MAC, if I recall, or at least nobody thought. I don't think we had that problem in MAC. I don't know. I don't think we did. I don't think it came up in MAC either. I mean, if the theory of harmlessness leads to a constructive amendment, we can't do that. Isn't that fair? I don't remember. Was MAC charged with one and then sentenced under three? MAC was charged with user carry. I don't know. I'd have to go back and look to see if it's parallel in this respect. Brandishing. Yeah, MAC was charged, I believe, with user carry. The jury instructions did not include brandishing. The verdict form didn't have brandishing, but the judge found brandishing. He brandished and got seven years because of that, if I recall. But is that a different offense or is that just some kind of enhancement or something? I mean, it's really using carry would just be two. Brandish is two. Brandish is two. Using carry is one. Brandish is two. Discharge is three. That's my understanding. So it is. I mean, do you happen to recall, did the opinion say whether the indictment in that case encompassed brandishing? I think it did. See, that would be the difference. I think it did. So you would not have a constructive amendment there, but here it did not encompass discharge. Yeah, I think MAC did encompass brandishing. It's like all of a sudden at sentencing you find out that you're constructively convicted of a different offense, which I think is very bizarre. Well, right. We fell under MAC, I guess, if they had been instructed properly. But you're right. Even if they're instructed properly, you're still looking at a possible constructive amendment, which is per se prejudicial. And I guess the fact that Hackett didn't just, you know, if Hackett never disputed that he discharged it, but still he was never. Yeah, I'm kind of in a corner on that. Yeah. Well. Well, you know, we can take it from there. I mean. Yeah. Sort of, well, whatever. You can say whatever you want to say or not say. Okay. I mean, our position is still that it's harmless error, only because he never disputed that he discharged the firearm. And if the jury would have been properly instructed, they would have found it because it wasn't even an issue. In fact, he admitted it. That's part of his other argument is that he shot Perkins in that incident. How badly were those guys hurt, just out of curiosity? Neither one was hurt all that badly, I don't think. Yeah, Hackett spent a couple days in the hospital. Perkins needed surgery, but he was only in for maybe a week. So neither one was. Is the gang still there? LSP? I don't think they are. After this prosecution, I mean, there were about 50 arrests, so I don't think the gang is there in the form that it was before. There might still be some remnant of it. Youngstown still has that issue that they have to deal with on pretty much a daily basis. So if there's nothing further, the Batson case, I really don't have anything on Batson that would add to what was in my brief. And the attempted murder of the government witness, I really don't have much to add to that either. All right. Well, I'll take your argument as in the brief. Okay. Thank you, Your Honor. I'm not sure I've ever done this before, but based on the argument and the positions are clear, I would wait. Okay, thank you. And that's a great example for our clerks. I mean, I think that's something that is a smart move.  It's a smart move in a lot of cases. Thank you both. And Mr. Doughton, thank you for your excellent representation pursuant to the Criminal Justice Act. We had a real good morning of arguments this morning. Thank you.